UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 22-cr-00214 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| QUINTELL DEWAYNE GLADNEY (01) | MAGISTRATE JUDGE HORNSBY |

### REPORT AND RECOMMENDATION

**Introduction**

Quintell Dewayne Gladney ("Defendant") is charged with possession with intent to distribute cocaine, possession with intent to distribute methamphetamine, possession of a firearm in furtherance of a drug trafficking crime, and possession of a firearm by a felon. The charges arose from a traffic stop.

Before the court is Defendant's Motion to Suppress. Doc. 20. Defendant argues that (1) Shreveport police officers lacked reasonable suspicion or probable cause to make the traffic stop; (2) the officers lacked probable cause to search the Defendant's automobile; and (3) the officers did not provide Miranda warnings to him prior to a custodial interrogation.

**The Facts**

An evidentiary hearing was held on January 12, 2023. The following facts were established by credible evidence. On May 26, 2020, Shreveport Police Street Level Interdiction Unit officers were standing outside their parked vehicles. Tr. 6. As a car drove past, the car sounded its horn. Tr. 6-7. There were no other cars in the area besides the

honking car and the police cars, and there was no emergency. Tr. 7, 28. The car turned into the driveway of a residence without signaling 100 feet prior to turning. Officers entered their cars and followed the honking car down the street. Tr. 8.

Officers followed the vehicle into the driveway and exited their cars. As Sergeant McKenna approached the vehicle, he observed the driver moving around in a suspicious manner. Tr. 8. Based on his training and experience, McKenna suspected the driver was concealing something or attempting to access something such as a weapon. Tr. 9.

McKenna approached the driver (Defendant) and explained the reason for the stop. Ms. Shamerik Adger was in the front passenger seat. Tr. 10, 20. Defendant told McKenna that he stopped at the residence to visit his uncle. Tr. 12.

McKenna noticed that Defendant was acting very nervous. Defendant refused to show both hands at the same time. Tr. 9. McKenna saw a bulge in the left side of Defendant's stomach and waistband area. Tr. 11. McKenna suspected the bulge was a firearm and directed Defendant to exit the vehicle. Defendant refused. Tr. 11. McKenna feared Defendant was armed, so McKenna reached in the open window of the car and opened the door. Tr. 12.

McKenna left Officers Lee, Bryant, and Hyde with Defendant. Tr. 13. McKenna walked over to the porch of the residence and spoke with two residents who were outside. Tr. 13. The residents initially said that they did not know Defendant. They then stated that they did know him but were unrelated to him. They were adamant that Defendant was not their nephew. Tr. 13-14.

McKenna instructed the other officers to remove Defendant from the vehicle. Tr. 14. They forcibly removed Defendant from his car for both officer safety and to further their investigation. Tr. 14.

Officer Lee handcuffed Defendant. Lee performed a quick pat-down for weapons. Tr. 15. Lee immediately located a gun in Defendant's waistband. Tr. 16. Lee also found $3,000 in cash in Defendant's waistband. Tr. 19-20. McKenna recited <u>Miranda</u> warnings to Defendant and asked Defendant if he was a convicted felon. Defendant admitted he was a felon. Tr. 17.

When Defendant was exiting his car, Officer Bryant noticed the smell of marijuana. Based on that smell, the officers searched Defendant's car. Tr. 38-39. In the center console of the car officers located marijuana, cocaine, methamphetamines, liquid codeine, and Klonopin. Tr. 17-18. They also found 41 loose rounds of ammunition scattered throughout the car. Tr. 18.

The officers put all of the seized items on the hood of an officer's car. Tr. 18; Govt. Exhibit 1 (dash cam video). Defendant was again interviewed and again admitted to being a felon. Tr. 19. Defendant stated that everything found in the car was his. Tr. 19. He explained that the passenger had only entered the car immediately prior to the traffic stop and she had nothing to do with the seized items. Tr. 19.

**Law and Analysis**

    **A. Reasonable Suspicion for the Traffic Stop**

A traffic stop is justified at its inception when an officer has "an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred,

or is about to occur, before stopping the vehicle." United States v. Lopez-Moreno, 420 F.3d 420, 430 (5th Cir. 2005) (citation omitted). "[R]easonable suspicion exists when the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure." Id. Reasonable suspicion is a low threshold; it is not probable cause. United States v. Walker, 49 F.4th 903, 906-07 (5th Cir. 2022). "Certainly, then, if officers 'have probable cause to believe that a traffic violation has occurred,' then there is also reasonable suspicion to stop the vehicle." Id., quoting Whren v. United States, 517 U.S. 806, 810 (1996).

Louisiana law provides, "The driver of a motor vehicle shall, when reasonably necessary to ensure safe operation, give audible warning with his horn, but shall not otherwise use such horn when upon a highway of this state." La. R.S. 32:351 (A)(1). Louisiana law further states, "Whenever a person intends to make a right or left turn which will take his vehicle from the highway it is then traveling, he shall give a signal of such intention in the manner described hereafter and such signal shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning." La. R.S. 32:104 (B).

As the defendant drove by the SPD officers, he honked his horn. Tr. 6-7. Officers saw no reason to honk, and no emergency was apparent. Tr. 7, 28. The honk was a violation of La R.S. 32:351(A)(1). The officers then observed Defendant turn into a driveway without signaling 100 feet prior to leaving the highway. That was a violation of La. R.S. 32:104(B). Tr. 7. Having personally observed two traffic violations, officers had

reasonable suspicion to believe traffic violations were committed, which provided reasonable suspicion to make a traffic stop.

### B. Additional Reasonable Suspicion

In order for an officer to conduct a pat-down frisk, the Fifth Circuit has set forth two requirements. First, the investigatory stop must be supported by a reasonable suspicion that the person frisked is committing or has committed a criminal offense. Second, the officer may conduct a protective pat-down if the officer reasonably suspects that the person stopped is armed and dangerous. United States v. Thomas, 997 F.3d 603, 609 (5th Cir. 2017).

McKenna saw Defendant's car turn quickly into a driveway prior to the officers activating their emergency lights. Based on his training and experience, McKenna suspected the driver might be trying to avoid him. As he approached the vehicle, he saw the driver moving around as if he was trying to hide something or gain access to a gun. Tr. 8-9. When McKenna began talking with Defendant, Defendant appeared to be very nervous. Tr. 9-11. Defendant refused to show both hands at the same time. Tr. 9. McKenna also saw a bulge in Defendant's waistband that resembled the size of a handgun. Tr. 12. McKenna informed Defendant that he believed Defendant was armed. McKenna asked Defendant to exit the car, and Defendant refused. Tr. 11. When McKenna checked the veracity of Defendant's story with the people at the residence, he confirmed that Defendant was lying to him about why he pulled into the driveway. Tr. 13-14.

Based on Defendant's lies, nervousness, bulge in his waistband, refusal to show both hands at the same time, and refusal to exit his car, the officers had additional

reasonable suspicion that further crimes were being committed and that Defendant was likely armed. Officers conducted a weapons-check pat-down and discovered a semi-automatic pistol in the location of the bulge in Defendant's waistband. The officer's removal of Defendant from his car and the subsequent pat-down for weapons were justified under Terry v. Ohio, 392 U.S. 1 (1968).

### C. Search of Defendant's Vehicle

Although warrantless searches are per se unreasonable under the Fourth Amendment, there are certain well-established exceptions to the warrant requirement. A warrantless search of an automobile stopped by police officers who have probable cause to believe the vehicle contains contraband is not unreasonable within the meaning of the Fourth Amendment. Carroll v. United States, 267 U.S. 132 (1924). The odor of burnt marijuana alone is probable cause to search a vehicle for contraband. United States v. Reed, 882 F.2d 147, 149 (5th Cir. 1989).

The Supreme Court held that when a police officer possesses "an articulable and objectively reasonable belief that the suspect is potentially dangerous," the protective pat down authorized by Terry extends to the passenger compartments of automobiles, limited to those areas in which a weapon may be placed or hidden. Michigan v. Long, 463 U.S. 1032, 1051 (1983). This rule derives from the need to protect officers' safety, because roadside encounters between police and suspects are particularly hazardous, and danger may arise from the possible presence of weapons in the area surrounding a suspect. United States v. Wallen, 388 F.3d 161, 165 (5th Cir. 2004).

Police may conduct a protective sweep under Long even if a suspect is handcuffed at the time of the sweep, as the fear of a person's gaining immediate control of weapons does not limit itself to the time of the stop but extends through the entire interaction between him and the officer. Wallen, 388 F.3d at 166. This is because if the suspect is not placed under arrest, he will be permitted to reenter his automobile, and he will then have access to any weapons inside. Long, 463 U.S. at 1051-1052.

As Defendant was removed from his car, Officer Bryant noticed the smell of marijuana coming from Defendant's car. Tr. 38-39. Based on this smell, Bryant began to search Defendant's car. During the search, officers located 41 rounds of ammunition, methamphetamine, cocaine, and what agents described as poorly packaged marijuana. Officers located the drugs in the armrest container of the front seats. Tr. at 40-41.

Furthermore, officer safety required that officers conduct a protective sweep of the vehicle for weapons that were readily accessible to Defendant and his passenger. The Fifth Circuit recently approved a protective sweep of an automobile under similar circumstances. United States v. Rodriquez,, 33 F.4th 807, 814 (5th Cir. 2022)(upholding a protective sweep of the vehicle of a detained driver). The illegal substances, packaging materials, and much of the ammunition were discovered in the vehicle's armrest storage area. Tr. 40-41. This area was large enough to conceal a weapon, so the officers were allowed to search the area as part of a protective sweep.

### D. Defendant's Voluntary Statements

The Government must prove statements made in a custodial interrogation were made voluntarily after a defendant has been given his Miranda warnings. Dickerson v.

United States, 530 U.S. 428, 436 (2000). A suspect is in custody "when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." United States v. Wright, 777 F.3d 769, 774 (5th Cir. 2015).

The roadside questioning of a motorist detained pursuant to a routine traffic stop does not constitute "custodial interrogation" for the purposes of the Miranda rule. Although an ordinary traffic stop curtails the freedom of action of the detained motorist and imposes some pressures on the detainee to answer questions, such pressures do not sufficiently impair the detainee's exercise of his privilege against self-incrimination to require that he be warned of his constitutional rights. Berkemer v. McCarty, 468 U.S. 420, 441-442 (1984). Thus, "traffic stops—stops which constitute a Fourth Amendment seizure—do not automatically place a person in custody for purposes of Miranda." Wright, supra.

McKenna initially approached Defendant's vehicle. He informed Defendant of the reasons for the traffic stop. McKenna then asked Defendant about his destination. Defendant explained to McKenna that he pulled into the driveway to visit his uncle. Tr. 12. He told police that the gentleman seated on the porch of the residence was his uncle. Tr. 12-13. This conversation is the exact type of conversation allowed under Berkemer and Wright. Miranda warnings are not required because it is not a custodial interrogation.

Following Defendant's removal from his vehicle, McKenna approached Defendant and immediately recited Miranda warnings to Defendant. Tr. 17. After Defendant told

McKenna that he would consent to an interview without an attorney, Defendant admitted that he was a felon. Tr. 17.

Just minutes later, officers finished their search of Defendant's vehicle. Officers spread the contraband items and other evidence on the hood of a police car. Tr. 18, Govt. Exhibit 1. McKenna then asked Defendant about the items. Defendant admitted to possessing all of the items. Tr. 19. He stated that they did not belong to Ms. Adger, his passenger. Tr. 19. Defendant also provided details of his prison sentences to McKenna. Tr. 19.

McKenna properly advised Defendant of his Miranda rights prior to any custodial interrogation. Defendant freely and voluntarily waived these rights and confessed to possession of the firearm, ammunition, and contraband. He also admitted his status as a convicted felon. Officers properly obtained these admissions under the Fifth Amendment and Miranda.

**Conclusion**

The traffic stop was supported by probable cause to believe that Defendant violated two traffic laws. Defendant blew his horn unnecessarily and then turned without using a traffic signal. Once the stop was underway, the officers had ample reasonable suspicion to remove Defendant from the vehicle and pat him down.

The officers smelled the odor of marijuana when Defendant was removed from his vehicle. A search of the passenger compartment of the vehicle and the vehicle's center console was also proper as a protective sweep.

Defendant was properly <u>Mirandized</u> before he was questioned. His statements were freely and voluntarily made.

Accordingly,

It is recommended that Defendant's Motion to Suppress (Doc. 20) be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Crim. P. 59(b)(2), parties aggrieved by this recommendation have **fourteen (14) days** from the date of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Crim. P. 45(b). A party may respond to another party's objections within **fourteen (14) days** from the filing of the objections. Counsel are directed to furnish a paper copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file timely written objections to the proposed findings, conclusions and recommendation set forth above shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See <u>Douglass v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 23rd day of March, 2023.

Mark L. Hornsby
U.S. Magistrate Judge